UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHAD ALLEN PETERSON | CIVIL ACTION |
| v. | NO. 16-14882 |
| NEXT PRODUCTION, LLC | SECTION "F" |

ORDER AND REASONS

Before the Court are four motions by Next Production, LLC: (1) motion for discovery sanctions or, in the alternative, to extend trial and defendant's expert deadlines and to award costs; (2) motion for summary judgment; (3) motion *in limine* to exclude all evidence, reference to, and argument concerning plaintiff's unalleged wage claim; and (4) motion *in limine* to limit plaintiff's alleged damages. For the reasons that follow, the motion for summary judgment is GRANTED, and the remaining motions are DENIED as moot.

**Background**

This is an Americans with Disabilities Act (ADA) case in which the plaintiff, *pro se*, alleges that he suffers from anxiety and

1

depression, and that the defendant failed to accommodate his disability and wrongfully terminated his employment as a Key Assistant Location Manager on the production of Season 2 of the MTV television series *Scream*.

Chad Allen Peterson sued Next Production, L.L.C. on September 22, 2016, alleging that Next Production refused to provide him with reasonable accommodations and fired him, in violation of the ADA, because his major depressive and anxiety disorders made it difficult for him to maintain the grueling work schedule demanded of him. This case is set for trial on September 25, 2017. In June 2017, the Court granted the defendant's motion to extend its expert report deadline after the plaintiff cancelled the independent medical exam scheduled by the parties. The plaintiff again cancelled the rescheduled independent medical exam in spite of a July 19, 2017 order compelling his attendance. This prompted the defendant's motion for discovery sanctions; the plaintiff's failure to submit to the examination rendered the defendant incapable of complying with its August 9, 2017 deadline to submit expert reports.

On August 4, 2017, the Court granted the defendant's motion for expedited hearing on its motion for discovery sanctions and further ordered the plaintiff to file his response or opposition papers no later than August 8, 2017. The Court expressly ordered:

"If Mr. Peterson fails to timely file papers into the record addressing the defendant's motion, the Court will treat Mr. Peterson's silence as abandonment of his case and acquiescence to the defendant's motion for discovery sanctions."  Next Production now moves for discovery sanctions, summary relief, and to limit or exclude some aspects of the plaintiff's claims or damages at trial. Not only has Mr. Peterson failed to respond to the defendant's motion for discovery sanctions, but he has also failed to respond to the defendant's motion for summary judgment and its two motions *in limine*.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.

Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

A. Disability Discrimination/Wrongful Termination

When a plaintiff has only circumstantial evidence of discrimination, the McDonnell Douglas burden-shifting framework governs the summary judgment inquiry into the plaintiff's claim for wrongful termination under the Americans with Disabilities Act, 42 U.S.C. § 12101. McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000). The plaintiff first must prove each of these essential elements of a *prima facie* case of disability discrimination:

> (1) he has a disability as defined by the ADA;
> (2) he was qualified for the job;
> (3) he was subject to an adverse employment action because of his disability; and
> (4) he was treated less favorably than a similarly-situated non-disabled employee.

Id. (citation omitted); Henry v. Cont'l Airlines, 415 Fed.Appx. 537, 539 (5th Cir. 2011).

If a plaintiff establishes his *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the employment decision. McInnis, 207 F.3d at 280. Once the employer articulates such a reason, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. Id. (citation omitted).

B. Failure-to-Accommodate

Under the ADA, an employer is only required to "accommodate the known limitations of an employee's disability." Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 224 (5th Cir. 2011). A *prima facie* case of failure-to-accommodate requires that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Neely v. PSEG Texas, Ltd. P'ship, 735 F.3d 242, 247 (5th Cir. 2013). Notably, "where the disability, resulting limitations, and necessary reasonable accommodation are not open, obvious and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." EEOC v. Chevron

Phillips Chem. Co., LP, 570 F.3d 606, 621 (5th Cir. 2009). If an employee establishes a *prima facie* case of failure to accommodate, then the employer may invoke the affirmative defense that the accommodation would constitute an undue burden or that it would counteract a business necessity. Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 682 (5th Cir. 1996).

III.

Next Production submits that it is entitled to judgment as a matter of law dismissing the plaintiff's ADA claims for wrongful termination and failure to accommodate because the summary judgment record indisputably shows that Mr. Peterson suffered from no substantial limitations as a result of his depression and anxiety disorders; the record supports the defendant's submission that it legitimately disciplined Mr. Peterson, who suffers from no substantial limitations due to his anxiety and depression, for poor job performance, including repeated absences from the job, insubordinate conduct, and other disciplinary violations. In other words, Next Production submits, because the ADA does not protect Peterson from his own bad behavior, it is entitled to judgment as a matter of law. The Court agrees.

The following record facts, which are undisputed, mandate summary judgment in Next Production's favor as to each of the

plaintiff's claims.  Chad Peterson admits that he suffered from no limitations (let alone substantial limitations) as a result of his alleged major depressive and anxiety disorders.  None of Peterson's healthcare providers have ever identified any kind of substantial limitations resulting from his alleged major depressive and anxiety disorders.  Next Production was not aware of any substantial limitations suffered by Peterson.

As Key Assistant Location Manager, Peterson was solely responsible for finding locations for the production to film all odd numbered episodes of the MTV television series Scream and then securing and managing these locations.  To perform his job duties, Peterson was required to be on set, or else at another location that required his attention.  While on location, Peterson was expected to attend production meetings and work with other members of the production team; these duties were essential to Peterson's role as Key Assistant Location Manager.  As part of his job duties, Peterson was required to report to and work with his direct supervisor, Stanley Pearse.

On February 18, 2016, Peterson overslept and arrived late to work, causing Peterson to miss a meeting that he was required to attend.  Peterson failed to notify his supervisor that he would be coming in to work late on that day.  On March 15, 2016, Peterson again overslept and failed to show up to work at all.  Because he

failed to show up that day, Peterson missed a meeting, other Locations Department members were forced to cover Peterson's job duties, and some of Peterson's job duties simply were not completed. Peterson did not notify his supervisor that he would not be coming in to work on March 15, 2016. At 7:14 p.m. that evening, Peterson's supervisor ordered Peterson to call and cancel an electrician that had been scheduled for production. Peterson refused to comply; instead, he replied to his supervisor (copying other crew members on the email) by suggesting that his supervisor do it instead. At 7:42 p.m., Peterson sent the following email to his supervisor, Pearse, and again he copied other crew members:

> Today is not a good day for this Stanley [Pearse]. I know already that you messed up with security last night. You forgot to order them and then tried to cover it up, you keep lying to me and other people on the crew and it's becoming a huge problem on the show and I don't understand it. I'm trying to work and do a good job and I'm constantly having to do my job and yours. People on the crew don't even call you when there are problems and updates, Transpo didn't even know how to contact you last night because none of them had your phone number. It's my phone that's ringing off the hook constantly, I'm not going to have a pissing contest with YOU AND AND I REFUSE TO LET YOU TREAT ME THAT WAY, just like yesterday, WHEN YOU WERE SHOUTING AT THE TOP OF YOUR LUNGS THAT YOU WERE GOING TO FIRE YOUR ENTIRE DEPARTMENT – it's not us IT'S YOU!!!!

Within minutes of receiving Peterson's email, Pearse fired Peterson. Peterson was fired because of his increasingly poor job performance, which included his hostile attitude toward coworkers

and his supervisor, his absences, and his insubordination, culminating in the events of March 15.

None of Peterson's healthcare providers have any identified or recommended any accommodations needed by Peterson. Peterson did not need any accommodations to perform the essential functions of his job. Reorganizing the entire Locations Department, finding and hiring a new map maker to work on the production, reorganizing how security was arranged and/or excusing Peterson from attending work to let him rest would impose significant financial and administrative hardships on the Locations Department. Reorganizing the entire Locations Department would disrupt production of the show and would be impractical, if not impossible, to accomplish in the middle of production. Finding and hiring a new map maker to work on the production would require hiring different third-party contractors. Excusing Peterson from attending work in order to rest would mean that all of the job duties of the Key Assistant Location Manager position would have to be borne by other crew members or else would require hiring additional employees.

*A.*

Applying the McDonnel Douglas framework to the plaintiff's disability discrimination/wrongful termination claim, it is clear that the plaintiff has not proved any of the *prima facie* elements

10

of his disability discrimination claim. Simply put, the plaintiff admits that he suffers from no limitations as a result of his anxiety and depression; the plaintiff's poor attendance and insubordination rendered him unqualified to be Key Assistant Location Manager; the plaintiff has submitted no competent evidence that he was terminated because of a disability rather than because of his absenteeism and insubordination; the plaintiff has identified no similarly situated, non-disabled employee that was treated more favorably. Even if he had created a fact issue as to any of these elements (which he has not done), Next Production has satisfied its burden to articulate a legitimate, non-discriminatory reason for terminating Peterson's employment: Peterson failed to report to work without advance notice and displayed an insubordinate and disrespectful attitude. Peterson also fails to carry his burden to show that Next Production's non-discriminatory reasons for terminating his employment are pretextual. Peterson merely speculated in his deposition testimony "I think I was terminated because Stanley [Pearse] was embarrassed that I had these disorders and that it was unacceptable and that he refused to meet my accommodation." Subjective, self-serving beliefs regarding discrimination, without more, is insufficient to withstand summary judgment. See Raina v. Veneman, 152 Fed.Appx. 348, 350 (5th Cir. 2005)(citing Byers v. Dallas

Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000)). On this record, for several independent reasons, Next Production is entitled to judgment as a matter of law dismissing the plaintiff's ADA wrongful termination claim.

*B.*

Next Production is likewise entitled to judgment as a matter of law dismissing the plaintiff's failure-to-accommodate claim. Just as the plaintiff has not proved that he is "disabled" or "qualified" under the ADA's wrongful termination framework, the plaintiff is not a "qualified individual with a disability," a necessary element of his failure-to-accommodate claim. Nor has the plaintiff shown that he suffered from any limitations from his alleged disabilities; in fact, Peterson admits that he suffers from no limitations as a result of his depression and anxiety. Because the plaintiff suffers from no limitations that could require an accommodation, Next Production is entitled to judgment as a matter of law dismissing Peterson's failure-to-accommodate claim. The Court need not consider the other independent grounds for dismissal advanced by Next Production in its request for summary relief on the plaintiff's failure-to-accommodate claim.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion for summary judgment is GRANTED and the

defendant's remaining motions are DENIED as moot.  The case is hereby dismissed with prejudice, at the plaintiff's costs.

New Orleans, Louisiana, August 21, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE